*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HOME-OWNERS INSURANCE COMPANY,

       Plaintiff-Appellant,

v

ESTATE OF STORMI ANN ELKINS, by JOHN
A. M. FERGUSON, JR., Personal Representative,
WALKIR NEIHARDT, and PIONEER STATE
MUTUAL INSURANCE COMPANY,

       Defendants-Appellees,

and

JOEL DAUGHERTY and JUSTIN M. GILBERT,

       Defendants.

UNPUBLISHED
April 11, 2019

No. 344330
Kalkaska Circuit Court
LC No. 16-012395-CK

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

In this first- and third-party no-fault action, plaintiff, Home-Owners Insurance Company (Home-Owners), appeals and challenges the trial court's opinion and order granting summary disposition in favor of defendant Pioneer State Mutual Insurance Company (Pioneer). On appeal, Home-Owners argues that the trial court erred in its interpretation of an exclusion in a Home-Owners' insurance policy issued to Franices Elkins (Franices), the grandmother of the decedent, Stormi Elkins (Stormi). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a fatal single-car accident in Fife Lake, Michigan. On July 4, 2013, Joel Daugherty picked up Stormi from Franices's house. Before the two teenagers left, Franices and Stormi's mother, Angel Elkins, told Stormi that she was not allowed to drive, because she only had her learner's license, which had been suspended. At the time, Stormi and Daugherty were 15 and 18 years old respectively. According to Daugherty, after he picked up Stormi, he

picked up two other teenagers, Walkir Neihardt and Justin Gilbert. Daugherty then drove the group to a party near Fife Lake to watch a fireworks display. The teenagers were at the party between 11:00 p.m. and midnight. At some point, Daugherty volunteered to buy cigarettes for another partygoer. According to Neihardt, Daugherty was "drunk," so he let Stormi drive his truck to the store.

Neihardt, along with Stormi, Daugherty, and Gilbert, got in the truck, and they departed for the store. According to Neihardt, on the way back, Stormi was "going a little too fast" for the road, which was "twisty and windy." Neihardt looked over at Stormi and saw the bright screen of her phone in her lap, and then Neihardt looked over to Daugherty, who was hanging out the passenger window. Neihardt pulled Daugherty back into the truck, and the next thing Neihardt remembered was waking up after the crash. According to the State of Michigan Traffic Crash Report, Stormi was driving when she was ejected from the truck. She was pronounced dead at the scene. The report indicated that her blood was drawn, and she had a blood alcohol content (BAC) of .05.

On June 29, 2016, Gilbert filed his complaint against Daugherty, the Estate of Stormi Ann Elkins, by John A. M. Ferguson, Jr., as Personal Representative (the Estate), and Gilbert's Insurer, Hastings Mutual Insurance Company. Gilbert alleged negligence against the Estate, vicarious liability against Daugherty, and underinsured motorist coverage against Hastings. Thereafter, Neihardt also filed a complaint against Daugherty, the Estate, and his insurer Pioneer.[1] On November 28, 2016, Home-Owners filed a complaint for a declaratory judgment against the Estate, Daugherty, Neihardt, Gilbert, and Pioneer. According to Home-Owners, it issued a policy to Stormi's grandmother Franices, and it denied any liability on behalf of Stormi as a relative living in the home because she was excluded from coverage for using a vehicle "without a reasonable belief of permission." As a result, Home-Owners requested the trial court to enter a declaratory judgment indicating that Home-Owners did not have a duty to defend or indemnify the estate with respect to the claims made by plaintiffs Gilbert and Neihardt. Pioneer filed its answer to Home-Owners' complaint for declaratory judgment, denying the assertion that Stormi was using a vehicle without a reasonable belief of permission. Therefore, it requested the trial court to enter a judgment declaring that Home-Owners has a duty to defend and indemnify the Estate in the lawsuit.[2]

On January 8, 2018, Home-Owners filed its motion for summary disposition under MCR 2.116(C)(10). Home-Owners argued that while Franices's policy covers relatives who drive a non-owned vehicle, coverage only extends to instances when the relative had a reasonable belief of permission to use the vehicle. However, because Stormi could not have had a reasonable belief of permission to use the vehicle, the policy's coverage would not extend to cover the injuries at issue in this case. Not only was Stormi 15 years old and too young to have a driver's license, her learner's license was suspended, and her grandmother and her mother expressly told

---

[1] After receiving a stipulation from the parties, the trial court entered an order consolidating Gilbert's and Neihardt's cases for purposes of discovery.

[2] The parties stipulated to consolidate Home-Owners' case with Gilbert's and Neihardt's case.

her not to drive on the night of the accident. Furthermore, Home-Owners argued that Daugherty testified that he could not recall whether he gave permission to Stormi to drive the truck; therefore, there was at least a question of fact as to whether she had a reasonable belief of permission to use the truck.

On January 18, 2018, Pioneer filed its own motion for summary disposition. Pioneer argued that the Home-Owners policy exclusion had no application to the facts of the case because Stormi had a reasonable belief of permission to use the truck. The undisputed facts were that Daugherty provided her with the keys to the truck, sat in the front seat as she drove, and was the only person authorized to grant Stormi permission to drive. Further, Pioneer argued that the Home-Owners exclusion did not state that the person driving had to have "your" permission, i.e., permission from the policyholder; instead, the exclusion required the person to have a reasonable belief of permission, meaning permission from the person with the authority to grant it—usually the owner of the vehicle.

On February 6, 2018, the trial court held a hearing on the motions for summary disposition. Afterwards, the trial court issued an opinion and order granting Pioneer's motion for summary disposition and denying Home-Owners' motion for summary disposition, concluding that the policy exclusion only required a reasonable belief of permission from the owner of the vehicle. The trial court held that because Home-Owners was obligated to defend the lawsuit, Pioneer should be dismissed from the case because its policy amount was exceeded by the coverage provided under the Home-Owners policy and Daugherty's insurance policy through Titan Insurance. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). When reviewing a motion brought pursuant to MCR 2.116(C)(10), this Court "must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the party opposing the motion." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). This Court's "task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue regarding any material fact exists to warrant a trial." *Id*. A genuine issue of material fact exists when the record, "giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ." *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997) (citation omitted). However, the court may not "assess credibility" or "determine facts on a motion for summary judgment." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

We review de novo a trial court's interpretation and application of an insurance policy. *City of Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 196; 702 NW2d 106 (2005). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001). "A contract is ambiguous if its provisions may reasonably be understood in different ways." *Id*. Thus, "[i]f a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular

circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage." *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 362; 314 NW2d 440 (1982).

## III. ANALYSIS

Home-Owners argues that the trial court erred when it interpreted the insurance policy and concluded that Home-Owners was obligated to provide coverage and defend the lawsuit. We disagree.

The subject of this litigation involves an automobile insurance policy that Home-Owners issued to Stormi's grandmother. Under Section IV of the policy, entitled "Individual Named Insured," Home-Owners provides liability coverage "to an automobile . . . not: (1) owned by or furnished or available for regular use to you or anyone living with you." However, the policy includes the following exclusion: "We do not cover: . . . (3) you or a relative using an automobile . . . without a reasonable belief of permission to do so." The interpretation of this exclusion is at the heart of this case.

The trial court concluded that the Home-Owners policy covered the accident because Stormi, as a relative, was using an automobile with a reasonable belief of permission to do so. On appeal, Home-Owners contends that Stormi did not have a reasonable belief of permission to use an automobile because her mother expressly forbade her from driving on the night of the accident, Stormi was 15 years old and only had a learner's license, which was suspended at the time of the accident, and she had a BAC of .05 and was not allowed to legally operate a vehicle. And even if Stormi needed permission only from Daugherty—the owner of the truck—there was at least a question of fact as to whether Stormi could have reasonably believed she had permission from Daugherty to drive the truck. On the other hand, Pioneer argues that Home-Owners' interpretation of the policy would require reading language into the exclusion that does not exist. Pioneer contends the exclusion should simply read that a relative must have a reasonable belief of permission from *the owner* to use the vehicle—not from the policyholder, the owner, and the law itself—which is the interpretation that Home-Owners is effectively advocating. We agree with Pioneer's and, ultimately, the trial court's interpretation.

The exclusion logically reads as follows: Home-Owners does not provide coverage if (1) the policyholder or relative, (2) uses an automobile not owned by or furnished or available for regular use to the policyholder or relative, (3) and the policyholder or relative uses the automobile without a reasonable belief of permission to do so. The term "permission" is defined as "the act of permitting" or "formal consent." *Merriam-Webster's Collegiate Dictionary* (11th ed). Understandably, only an owner, or someone authorized by the owner, may provide consent to use his or her vehicle. Thus, in order to obtain coverage, Section IV of the policy clearly requires the policyholder or relative of the policyholder to have a reasonable belief of permission that the owner of the vehicle, or someone else authorized to give consent on behalf of the owner, consented to the use of the vehicle. Other provisions in the policy support this interpretation. Section II, entitled "Liability Coverage," states that Home-Owners will pay damages for bodily injury and property damage "on behalf of any person using your automobile (that is not a trailer) with *your* permission or that of a relative[.]" (Emphasis added.) Section II also covers damages

"on behalf of any person or organization legally responsible for the use of your automobile (that is not a trailer) when used by you, a relative, or with *your* permission or that of a relative." (Emphasis added.) That said, Home-Owners could have drafted the exclusion and stated "your permission" if its intent was to ensure that a relative had permission from the policyholder to drive another's vehicle. Because such language was not included, the clear language of the policy exclusion requires a reasonable belief that the relative has obtained consent from only the owner of the automobile or someone authorized to give consent on behalf of the owner.[3] And even if the policy exclusion was ambiguous and both parties' interpretations were equally plausible, this Court must construe the policy against the drafter and in favor of coverage. *Raska*, 412 Mich at 362. Therefore, the trial court did not err in its interpretation of the policy.

The question, then, turns on whether Stormi had a reasonable belief of permission from Daugherty to use his truck. After reviewing the record, we conclude that there is no genuine issue of material fact that Stormi had a reasonable belief of permission from Daugherty to use the truck. The evidence clearly shows that Stormi was driving Daugherty's truck at the time of the accident while Daugherty sat in the passenger seat. Even though Daugherty testified at his deposition that he did not remember if he allowed Stormi to drive, he admitted that he was the only one who could have given Stormi permission to do so. Moreover, in his answer to a request for admissions, Daugherty indicated that he let Stormi drive the truck. Additionally, Neihardt testified that Daugherty let Stormi drive because Daugherty was too intoxicated to drive. Neihardt also provided a detailed description of what transpired before the crash, including why they had driven to the store, how fast Stormi was driving, and that Daugherty was hanging out the passenger window just before the accident. Finally, the police report indicated that Stormi had been driving the truck at the time of the accident. Viewing this evidence in the light most favorable to Home-Owners, it is clear that Stormi had a reasonable belief that Daugherty gave her permission to use the truck.

Home-Owners, however, still argues that even if Daugherty allowed Stormi to drive, she could not have had a reasonable belief of permission to use the vehicle given the other circumstances at the time. Specifically, Stormi had been drinking, she was only 15 years old, she did not have a driver's license, and her grandmother and her mother told her not to drive that night. This evidence, however, does not detract from the fact that Stormi reasonably believed that she had permission *from Daugherty*, who was the owner of the truck, to use the truck. Even if Stormi knew she could not legally drive, nothing in the policy requires the legal operation of the vehicle. To conclude otherwise would require this Court to read new language into the policy. Therefore, this argument is without merit.

Home-Owners also argues that Daugherty did not have the legal authority to grant Stormi permission to drive his vehicle. According to Home-Owners, Daugherty could not grant Stormi permission to drive because to do so was a crime under MCL 257.325, which prohibits any person from causing or knowingly permitting a minor to drive without a license upon a highway,

---

[3] Moreover, it is unreasonable to conclude that the drafter's intent was to ensure that policyholders give themselves permission to drive another's automobile.

and MCL 257.625(6)(a), which prohibits a minor from operating a vehicle while intoxicated. The question here, however, is not whether Daugherty could have legally granted Stormi permission to use the truck, but is instead limited to whether Stormi reasonably believed that she had permission to do so. Given the factual circumstances previously discussed, the trial court did not err when it found that Stormi had a reasonable belief that Daugherty gave her permission to use the truck.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron